This is Royan v. Chicago State University, Appeal No. 24-1734. Mr. Blum. Good morning, Your Honors. Good morning to opposing counsel. My name is Will Blum on behalf of the Plaintiff Appellant, and may it please the Court. Had Isla Royan not told Dr. Patel on March 6, 2019 of her disability, she would have graduated from pharmacy school that fall. The District Court erred in making a factual finding that Ms. Royan left her rotation voluntarily when there is undisputed evidence that Dr. Bishop told her to leave and then directed her by email not to return after Dr. Patel berated and criticized her in an effort to push her out. Leaving this rotation was the stated reason for the F-grade she received in that rotation, which precipitated her removal. Mr. Blum, can I ask you, can you separate between the two rotations? I think your brief spends a lot of time talking about the first rotation, but you spend much less time on the second rotation. And she received, I think, a failing grade in the second rotation as well, the Kerner rotation. Yes, Your Honor. And the law requires, at least I think, that discrimination be the sole cause of her dismissal. And so, can you tie, if she receives a failing grade in the second rotation, what's your best case that based on the failing grade in the second rotation, not but for cause, but sole cause? Absolutely, Your Honor. I would make two arguments on that point. One, Ms. Ryan would not have been in Dr. Kerner's rotation but for the discrimination she experienced starting in March of 2019. You just said but for. That was the sole cause. That discrimination was the sole reason that she was even in Dr. Kerner's rotation. Okay, but she failed Dr. Kerner's rotation. And I can speak to that point as well. Dr. Kerner, as the testimony and the evidence shows, had previously told her that he would fail her if he had her again. Ms. Ryan told that to the administration, to the defendant. But was that based, was, did Kerner, is there evidence that Kerner says that because of discrimination? Kerner doesn't say that. I don't believe there's any evidence that Kerner said that because of. So what's the evidence that the sole cause of her termination was discrimination? I think the sole cause is that it was because, it was that discrimination that had her in that rotation in the first place. It was entirely downwind. But that's two steps removed, I guess is what I'm saying. She was discriminated against so she was put in Kerner's rotation but she was fired because she failed Kerner's rotation. So how do you tie, you know, you see where the disconnect is for me? I understand. The fact that Kerner's rotation, that an F in Kerner's rotation would lead to her dismissal from the program is only because of the F in Dr. Patel's rotation. It's entirely downstream and so it's not an independent cause. It's, you know, the sole cause versus but for cause distinction. So you're not arguing that she failed Kerner's rotation because of discrimination? We are not arguing… You're arguing she would have been in Kerner's rotation but for discrimination? We are arguing that the discrimination was the sole cause for her being in Kerner's rotation which… Which was not the sole cause for her dismissal because she failed. She failed in that, she failed in a rotation that she was told from the start you were going to fail if I get to grade you again. Which is something that Ms. Ryan told the administration immediately after being assigned to Dr. Kerner's rotation. She said, this professor has previously said I'm going to fail you if I can. You know, made that threat and the administration took no action. And the administration failing her in Dr. Patel's rotation, putting her in academic probation, refusing the appeal, and then putting her in rotation with a professor who had said I'm going to fail you is all a product of the discrimination. The discrimination is the sole cause that any of this was happening. And I think this gets to the distinction that I think you're raising between the sole and but-for standards. As we argue in our briefing, that distinction is relevant in mixed motive cases where there is both legitimate and illegitimate reasons for an action. Under the ADA standard, the fact that there is a but-for cause that is illegitimate, that is because of disability, is enough even where there are also legitimate causes. The Rehab Act standard says that where there is a mixed motive like that, a claim cannot maintain because the discrimination over disability has to be the sole cause. Here, there is one sole cause, and it is the disability. Everything that happened to her after she disclosed her disability to Dr. Patel, Dr. Patel falsely asserted that she was going to hurt herself to the administration, all of that was solely caused by discrimination against her on the basis of that disability. Mr. Bloom, I was looking, maybe you can help me, for evidence that plaintiff disputes mistakes identified by Dr. Karner or by Dr. Patel in her substantive rotation work. We don't dispute that she made mistakes. All students make mistakes. We do dispute that those mistakes were the reason for her F in Dr. Patel's rotation and being placed in this process. As the written email evidence shows, she was given that F for leaving her rotation and not returning, even though Dr. Bishop told her to leave. How about Karner? Karner, there is very little evidence as to why that failure happened. We don't have much evidence on that, but as we've said, the fact that she was in front of Karner at all was a consequence of the discrimination. And Karner said before any of this even happened, it was a foregone conclusion at that point, he was going to fail her. Well, if he could, but I guess I'm trying to, we're talking about somebody who was training for a safety critical profession, right? Absolutely. And at least as I reviewed Dr. Karner's emails, he's identifying some pretty significant errors. And I gather those are not disputed. I don't believe the summary judgment motion below got to the details of the errors he raised. I think the important thing to note here is that she was getting an A in every other class that she had at this time. And if we win this case, it doesn't mean poof, Ms. Ryan is a pharmacist. It means she has an opportunity to complete her degree. If she goes back and genuinely can't hack it, that will be borne out. Could you address- Every other, oh, excuse me. No, go ahead. Every other course she was in, she was getting an A. On another rotation, she got a letter of commendation. And it's important, I think it's worth noting that the other cases that defendant cites on otherwise qualified individual show far greater and far more objective standards of being unqualified. Novak involves multiple objective exams that the plaintiff failed. Ewing involves a plaintiff who got the lowest score ever on a medical examiner test. And that's simply not Ms. Ryan's situation. Could you address the Kahn case? The Kahn case? Yes. So in the Kahn case, the student had failed four classes, was on track to fail three others. Those were mostly on the basis of objective exams, as I recall the details of that case. I think those are conditions quite different than the facts in this case. And I think the Kahn standard says we should defer to academic decision-making, academic opinions, but only if that professional expertise is actually being exercised. One of the points, however, in Kahn is that the school there had been granting a number of accommodations for the student's disability, which weighed pretty heavily against a finding of disability discrimination. And we have that here, as I understand the fact pattern. Yes, I think the difference is here, the F that she was given in Dr. Patel's rotation, which precipitated this whole course of events, was not for failing academic standards. It was not for underperformance. It was explicit. We have documentary email evidence that that F came because she left the rotation and didn't return, even though we have undisputed evidence that Dr. Bishop told her to leave that rotation and an email to her indicating do not return. I'd like to reserve some time for rebuttal if there are any other questions. Most certainly. Thank you, Your Honor. Okay, Mr. Herring. Good morning, Your Honor. Counsel, may it please the court. The three points that I want to make, Your Honor, why this court should affirm summary judgment in favor of Appelli, Chicago State University. As the court has already acknowledged, the first point is the district court relied on the correct standard, which is sole causation. The appellant was unable to establish, as a matter of law, that she was dismissed from the program solely because of her disability. Under that standard, Your Honor, the court was correct in granting summary judgment under the Rehabilitation Act. The second point, Your Honor, the undisputed facts in the record show that she was not a qualified individual under the ADA because she did not meet the program requirements. And the third point that I want to make, Your Honor, is that she cannot establish pretext based on the undisputed facts in the record. Going to my first point, Your Honor, as the court has already acknowledged, it's clear even based on the strict reading of the statute that sole causation is the correct standard, and the district court applied that. Solely by reason of her disability, a person cannot be subject to discrimination. The cases also follow that. Conners v. Mitt Wilkie, Swain v. Wormuth. These are Seventh Circuit cases. The first decided in 2021. The second decided in 2022. As Your Honors have been discussing, clearly there was a failure in her meeting the standards that are required in the second rotation by Dr. Koerner. And that alone shows that the issues that she raised with Dr. Patel, there's a disconnect there, which shows that it couldn't have been the sole disability discrimination, couldn't have been the sole reason for a dismissal. Key facts to understand is that the academic committee were the decision makers who put her on that probation and decided that she needed to take another rotation and take remedial steps. The academic committee did not know of her disability, and Dr. Koerner, the facts of the record show, did not know about her disability. So based on those undisputed facts, she cannot show that disability was the sole reason for a dismissal. So who was the actor who supposedly said you're too sick for this program? I think she alleges that Dr. Patel, who was a preceptor at the University of Chicago, allegedly made that. Dr. Patel denies that. I thought she also said that the dean had said that. The dean of Chicago State University, that's correct. Okay, so we've got the dean of her program allegedly, but we have testimony to this effect saying you're too sick for this program, right? And it's self-serving testimony from the appellant, yes. I don't care if it's self-serving or not. You're familiar with our case law that has corrected that earlier departure from summary judgment law. I'm trying to picture an employment case, for example, where the CEO says you're too Catholic for this job or you're too black or too white for this job. Wouldn't that seem to suggest that there was a decisive role played by religion or race? Well, I think under these facts, Your Honor, that the academic standing committee is the decision maker that made the decision when she failed the first rotation. And it was her, and there's e-mails in the record where she says it's her decision to leave that rotation. When she made that decision to leave the rotation, there's consequences. She subsequently got an F in that rotation. And the academic standing committee put on – She says she was following Bishop's instructions, right? That is what she's alleging or that's what she's testified to afterwards. But the e-mails, and there's a clear e-mail from her where she says it was her decision to leave and that no matter what, she wasn't going to go back to that rotation. There's also facts in the evidence where Dr. Patel called and asked her to return to that rotation, and she didn't. Regardless, Your Honor, she had another opportunity given by the academic standing committee to go to a second rotation, which is critical. This is the reason why she was dismissed from the university because she failed the rotation in that – for Dr. Koerner. And as Your Honor has pointed out, there was no basis for Dr. Koerner, at least no evidence in the record, to suggest that Dr. Koerner made any decisions regarding her performance based on her disability. And she's not even arguing that, right? She's not arguing that Dr. Koerner failed her because of her disability or that there's evidence in the record that he failed her because of her disability. That's correct, which is, I think, critical and fatal to her claim under the Rehabilitation Act, which she must argue and show and prove that disability was the sole reason for her dismissal. But the sole reason for her dismissal is because she failed that second rotation with Dr. Koerner. That goes to my second point, Your Honor, that she couldn't be a qualified individual under ADA because she didn't meet the program requirements. The university followed the procedures in its student handbook, which makes clear that if you fail a rotation – and I should go back. Counsel spends a lot of time saying that she got great grades, you know, Bs, Cs, As the first three years. But the requirements of the program is that you complete those courses and that you also complete the rotation in the fourth year. And if you fail to complete the rotation satisfactorily, then you are going to be dismissed from the program, and that's what happened here. The university followed the handbook in that when you fail a course, you get put on academic probation. She got a second opportunity. She went before the Academic Standing Committee. They decided to give her that opportunity. They put her with Dr. Koerner. That was a decision the Academic Standing Committee made. She had an opportunity to pass that rotation, correct those issues. But as the facts and the undisputed facts in the record show, that she was unable to meet those standards, that she failed that rotation. And because of that, that's the reason why she was dismissed. I also want to address one last point, is that she can't show pretext. The evidence, undisputed evidence in the record shows that, again, the Academic Standing Committee, which consisted of multiple members, faculty, heads, a dean of the Academic Student Affairs, department chairs, made a decision to put her on the path that gave her an opportunity to succeed, and she failed that. Again, there's no evidence in the record that they knew of her disability. With respect to, there's evidence in the record that she had, the CSU had given her plenty of opportunities historically because of her disability, in terms of leave of absences. In 2016, 2017, there's no reason to believe or any reasonable inferences to give to her to suggest that all of a sudden, that the university would somehow come up with some scheme to discriminate and dismiss her based on her disability, when the history shows, in the record, they've in fact have given her several accommodations, and in fact granted her a leave of absence to be successful in the program. And I also want to point out, which is one fact that I think Appellant relies on exclusively, is that Dr. Patel, which is a University of Chicago preceptor, not a professor at Chicago State University, Dr. Patel, there's evidence in the record that she in fact criticized Ms. Beroyan's performance prior to March 6th, when she suggested that that's the reason she had disclosed her medical conditions, and all of a sudden that's the reason why Dr. Patel wanted to exclude her from the program. But the evidence in the record shows that her performance had been critiqued prior to March 6th. She disputes the severity or disagrees with those critiques, but she does admit that she had those issues. Where do we find that? That's in the record, Your Honor. There's an e-mail exchange where Dr. Patel, in her evaluation, says that these are critiques that she had for Ms. Beroyan prior to the March 6th date, where Ms. Beroyan alleges that that's when she disclosed her medical conditions. That e-mail was after the March 6th meeting, is that right? So that was one e-mail, Your Honor, but there is evidence in the record that prior to March 6th. That's what I'm trying to ask you. Correct. What is that evidence? Because I thought that was all generated after the March 6th meeting. Maybe I misunderstood. I don't have that exact site, Your Honor, but it's in the record. I can't cite that at this very moment. Can you give us a hint as to what it consists of? Was it in an e-mail? Was it in deposition testimony? Because I thought that Dr. Patel was late with her evaluation. And the sequence here could be material. Well, I don't have that exact pinpoint. I can certainly follow up with that, but I think even moving away from that, I don't know that that is material, and I see my time is up, because I think the focus is on her performance in Dr. Koerner's rotation, which is what, in fact, led to her dismissal. And that's the reason why she can't show it. Well, I understand that's your theory, but we were talking about the Patel experience, and you were telling us that it's documented that Patel was critical of her before 6th. So that's what I'm looking for. I can't pin points to that site, but there is evidence in the record, Your Honor, that Dr. Patel did have criticism of her. Is it in your summary judgment papers in the district court? It is, Your Honor. Thank you. Okay, thank you, Mr. Herring. Mr. Blum. Thank you. I'd like to just make two quick points of fact and two quick points of law. Opposing counsel mentioned that the academic standing committee made these decisions, and they had no knowledge of her disability. Setting that question aside, their role is ministerial. As he said, they were simply following the established procedures, and the decision to give her an F had been made prior to the meeting of the academic standing committee. We have an e-mail from Dr. Johnson indicating that she should be awarded an F. This is Dr. Johnson, who is well aware of her disability, and we advised her, reprimanded her for sharing that disability with Dr. Patel. Also, on the qualified individual and the idea that she somehow failed the requirements of the program, the only requirement of the program that's been identified that she failed was getting the F in this class. That F, we argue, is because of her disability. That's what this case is about. On the law question, the standard for a rehab act claim, opposing counsel pointed to Connors and Swain. Neither of those cases actually turn on causation. Connors says causation is not the issue here. Neither of them even explain what the standard is. They just say it's a stricter standard but don't actually say how to apply it. We address what that distinction is in our opening brief. And the final legal point I'll make here is that both my presentation, your questions, opposing counsel's presentation have largely centered on the facts of this case, and this is a motion for summary judgment. It seems obvious, both from the briefing and oral argument, that there are material questions of disputed fact here, and those questions should go to a jury to decide. Thank you. Thank you, Mr. Bloom. We can't just take it out of your advisement.